UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
TERESA HUDSON JORDAN, individually;
TERESA HUDSON JORDAN, on behalf of her
minor daughter N.J.,

                           Plaintiffs,

   - against –

DELTA AIR LINES, INC.,

                          Defendant.
---------------------------------------------------------------X

Case No.:

**COMPLAINT**

**JURY TRIAL DEMANDED**

**ECF CASE**

Plaintiffs Teresa Hudson Jordan, individually ("Ms. Jordan") and on behalf of minor daughter N.J. (collectively, "Plaintiffs"), by and through their attorneys, Joseph & Norinsberg, LLC, allege as follows:

## NATURE OF THE ACTION

1. This is an action seeking damages and injunctive relief against Defendant Delta Air Lines, Inc. ("Delta" or "Defendant") for discrimination, intentional infliction of emotional distress, assault, and other violations of law arising from an incident on March 27, 2024, where Plaintiffs were wrongfully removed from Delta Flight 5792 after being subjected to discriminatory treatment by a Delta flight attendant, Stephanie "Doe" ("Stephanie" or "Flight Attendant Doe.").

## PRELIMINARY STATEMENT

2. This case epitomizes the revolting reality that, even in the year 2025, Black Americans continue to endure the indignity of "Flying While Black," an experience steeped in humiliation and echoing the dehumanizing degradations of the Jim Crow South.

1

3. In a grotesque display of racial hostility, Ms. Jordan, a Black woman traveling with her minor daughter in first class, was singled out, verbally assaulted, and subjected to public disgrace aboard Delta Flight 5792, for simply meeting the gaze of a white flight attendant.

4. Ms. Jordan's innocent and natural act of making eye contact with Delta's white flight attendant provoked a violent and demeaning tirade laced with unmistakable racial animus, where the white flight attendant openly chastised Ms. Jordan for "looking at her" and then threatened to "turn this plane around" if she did not comply and essentially lower her gaze – reminiscent of an era when a simple glance from a Black person toward a white individual would trigger brutal retaliation.

5. Shockingly, despite Ms. Jordan's willingness to humble herself and not engage with the white flight attendant in an effort to diffuse the situation, the attendant then flexed some more. The white flight attendant then falsely accused Ms. Jordan of "disrupting" the flight, causing mother and child to be forcibly removed from the plane – which they were solely on to attend a critical medical appointment for Ms. Jordan's daughter.

6. Compounding this injustice, Delta ratified the outrageous conduct of the airline's white flight attendant by failing to investigate or respond to multiple eyewitness accounts confirming Ms. Jordan's innocence and condemning the attendant's racially charged misconduct. Indeed, as one witness described it, she was

**"*treated like a dog or a slave.*"**

7. Delta's actions flagrantly violate federal law, specifically 42 U.S.C. § 1981, which prohibits racial discrimination in contractual relationships, and Delta's actions also breached fundamental duties of decency and care owed to passengers under principles of negligent hiring, retention, training, and supervision.

8. Delta's inexcusable conduct inflicted profound emotional trauma upon Ms. Jordan and her daughter, including debilitating psychological trauma for which Plaintiffs seek redress through this litigation.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States, including but not limited to 42 U.S.C. § 1981.

10. This Court also has jurisdiction pursuant to 28 U.S.C. § 1332 as the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because Plaintiffs reside in New York and were returning to New York at the time of the incident.

## JURY DEMAND

12. Plaintiffs demand a trial by jury on all issues so triable.

## PARTIES

13. Plaintiff Teresa Hudson Jordan is an individual residing at 380 Lenox Ave, in the County, City and State of New York.

14. Plaintiff N.J. is a minor child and the daughter of Ms. Jordan. She resides with her mother in New York, New York.

15. Delta Air Lines, Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business in Atlanta, Georgia.

**FACTUAL ALLEGATIONS**

16. Ms. Jordan is a Black woman and a Platinum SkyMiles member who consistently chooses Delta for her travel needs.

17. On March 27, 2024, Plaintiffs were passengers on Delta Flight 5792.

18. Ms. Jordan was seated in First Class, seat 4A, and her daughter was seated across the aisle in seat 4D.

19. When boarding the flight, Ms. Jordan and her daughter were greeted by a flight attendant named Kaylee, who was standing in the front galley, and they returned the greeting by saying "Hello."

20. Ms. Jordan had no contact with another flight attendant, Stephanie "Doe," during the boarding process, as Stephanie was in the rear of the plane.

21. After the doors closed and the flight began to taxi to the runway, Ms. Jordan leaned forward to say something to her daughter.

22. As flight attendant Stephanie was walking by, Ms. Jordan looked up at her and made eye contact, but did not say a word.

23. Without any provocation whatsoever, Flight Attendant Doe, a Caucasian woman, began screaming at Ms. Jordan, yelling: "*Don't look at me like that! Don't eye me up and down. If you can't comply with my commands, then I'll turn this plane around and we can go back to the gate*!!"

24. Ms. Jordan responded by saying "I comply." Despite this, Flight Attendant "Doe" continued her unprovoked verbal attack on Ms. Jordan, stating, "*You can catch another flight. Do you understand*?!!"

4

25. When Ms. Jordan did not immediately respond, Flight Attendant "Doe," who was standing very close to Plaintiff and towering over her, screamed, "*That was not a rhetorical question*!!" Ms. Jordan again stated, "I comply, I've already said that and everyone has heard me," to which Flight Attendant Doe sarcastically responded, "*Thank you!!*" before walking to the back of the main cabin.

26. Throughout this entire interaction, Ms. Jordan remained seated, did not raise her voice at all, did not threaten the flight attendant or anyone else, and spoke in a calm voice and regular tone.

27. Ms. Jordan had never spoken to Stephanie before this altercation and was stunned by the flight attendant's shockingly aggressive, threatening and bullying tone, which felt both violent and demeaning.

28. Multiple other passengers who witnessed this incident were shocked by the sudden and violent outburst by Flight Attendant Doe.

29. One such passenger, Megan Corey, later wrote that "*I've never seen/heard a flight attendant act so aggressively towards a passenger. It was disturbing and unwarranted. I'm filing a complaint.*"

30. Another eyewitness, Antoinette Wilson, later wrote that Stephanie had treated Ms. Jordan as if she were a "**dog or a slave**."

31. Notwithstanding the outrageous conduct of Flight Attendant Doe, Ms. Jordan never spoke back, as she knew that her daughter had a critical medical appointment in New York that she needed to make, and she did not want to take any chance of missing that appointment.

5

32. Despite Ms. Jordan's full and complete compliance, however, Flight Attendant "Doe" willfully and maliciously lied to other Delta employees on the plane, including the Captain, telling them that Ms. Jordan was an unruly, disruptive passenger who had refused to comply with her demands.

33. Based upon this egregious lie, the flight's Captain decided to turn back to the gate and have Ms. Jordan removed from the flight. The plane thereafter halted on the runway, turned around, and taxied back to the gate.

34. Thereafter, a Red Coat gate agent named "Laura" boarded the plane and ordered Ms. Jordan, in front of her minor child and fellow passengers, to disembark the airplane.

35. Ms. Jordan and her daughter complied calmly, gathering their items from the overhead compartment, following the instructions provided by the Red Coat gate agent.

36. Ms. Jordan and her daughter experienced extreme humiliation, embarrassment and shame when being thrown off the plane, as all passengers stared at Ms. Jordan and her daughter as they were being removed.

37. As Ms. Jordan and her daughter were exiting the plane, four other passengers in First Class spoke up in Ms. Jordan's defense, objecting vehemently to the way Flight Attendant "Doe" had acted and confirming that neither Ms. Jordan nor her daughter had done anything wrong.

38. These passengers offered their support, with some writing down their names and phone numbers for Ms. Jordan, while others took her phone number and texted her their contact information.

39. At least three of these passengers submitted written complaints to Delta, detailing the egregious and highly improper conduct of Flight Attendant "Doe."

40. These passengers submitted their complaints to the highest levels of Delta's leadership, including Delta CEO Ed Bastian and Delta COO John Laughter.

41. Despite these written complaints, Delta has wholly failed and refused to take any corrective measures, much less even respond to any of these complaints.

42. As noted above, Ms. Jordan's daughter had a vital medical appointment at Mount Sinai Hospital in New York City the following morning at 10:00 a.m., which had been scheduled months in advance due to its importance and critical nature.

43. Their removal from the flight at 6:30 p.m. jeopardized her daughter's ability to attend this critical medical appointment.

44. As a result of this incident, both Ms. Jordan and her daughter have suffered severe emotional distress, including symptoms of post-traumatic stress disorder ("PTSD"), characterized by nightmares, severe anxiety, and a persistent state of hyper-vigilance.

45. Ms. Jordan has been forced to make adjustments at work to avoid airline travel whenever possible, which has put her livelihood at risk, as travel is often necessary for her professional responsibilities.

46. Both Ms. Jordan and her daughter have been in therapy and are continuing their sessions to manage the trauma resulting from this incident.

47. Despite communications from other passengers who witnessed the incident, Delta has not reached out to Ms. Jordan regarding this matter.

48. The four passengers who witnessed the incident represent a cross-section of ethnicities and are prepared to provide detailed declarations attesting to what they witnessed.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
*(Violation of 42 U.S.C. § 1981 - Race Discrimination)*

49. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

50. 42 U.S.C. § 1981 prohibits discrimination on the basis of race in the making and enforcement of contracts.

51. Ms. Jordan, as a Black woman, entered into a contractual relationship with Delta when she purchased tickets for herself and her daughter on Delta Flight 5792.

52. Delta, through its employee Stephanie, discriminated against Ms. Jordan on the basis of her race when Stephanie aggressively confronted Ms. Jordan for merely making eye contact, using language steeped in racial undertones that echoes historical racial subjugation.

53. The flight attendant's verbal attack of Plaintiff for merely looking at her—language steeped in racism—echoes a dark and painful era where the simple act of a Black person looking a White person in the eye could provoke violent repercussions.

54. Delta further discriminated against Ms. Jordan by removing her and her daughter from the flight without justification, based solely on Flight Attendant Doe's racially motivated complaint.

55. As a direct and proximate result of Delta's discriminatory actions, Plaintiffs have suffered damages including emotional distress, humiliation, embarrassment, and financial losses.

## SECOND CLAIM FOR RELIEF
(*Intentional Infliction of Emotional Distress*)

56. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

57. Delta's conduct, through its employee Flight Attendant "Doe," was extreme and outrageous, exceeding all bounds of decency and utterly intolerable in a civilized society.

58. Stephanie acted with the intent to cause, or with reckless disregard of the probability of causing, severe emotional distress to Ms. Jordan and her daughter.

59. The public humiliation, unwarranted aggression, and subsequent removal from the flight caused both Ms. Jordan and her daughter to suffer severe emotional distress, including symptoms of PTSD, requiring ongoing therapy.

60. As a direct and proximate result of Delta's actions, Plaintiffs have suffered severe emotional distress, including but not limited to anxiety, fear, humiliation, insomnia, and recurring nightmares.

## THIRD CLAIM FOR RELIEF
(*Assault*)

61. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

62. Defendant's aforementioned actions placed Ms. Jordan in apprehension of imminent harmful and offensive bodily contact by Flight Attendant "Doe," who was towering over her in threatening and menacing manner as she was screaming at her, leading Plaintiff to believe that Stephanie may attempt to forcibly remove her from the plane.

63. As a result of the foregoing, the Plaintiffs sustained, <u>inter alia</u>, assault, emotional distress, embarrassment and humiliation and deprivation of their rights.

64. As a result of Delta's conduct, Plaintiffs have suffered physical pain and mental anguish, together with shock, fright, apprehension, embarrassment, and humiliation.

## FOURTH CLAIM FOR RELIEF
(*Defamation*)

65. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

66. Flight Attendant "Doe" made false and misleading statements about Ms. Jordan to other members of Delta's staff, including the Captain of the flight.

67. Flight Attendant "Doe" told other members of Delta's staff, including the Captain, that Plaintiff had behaved in a disruptive and unruly manner, and had refused to obey her orders.

68. The flight Captain then relayed these same false and misleading statements to other Delta and/or airport employees, including the gate agent, who removed Plaintiff from the plane as a result of these false allegations.

69. These false statements constituted defamation *per se.*

70. Flight Attendant "Doe" acted with a reckless disregard for the truth in making false and misleading statements about Plaintiff.

71. Flight Attendant "Doe" acted with malice in making false and misleading statements about Plaintiff.

72. Flight Attendant "Doe" made such statements without privilege or authorization from Ms. Jordan.

73. Delta is vicariously liable for the defamatory statements made by their employee, Flight Attendant "Doe."

74. As a result of the foregoing, Ms. Hudson suffered damage to her personal and professional reputation and career.

## FIFTH CLAIM FOR RELIEF
*(Negligent Hiring/Training/Retention)*

75. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

76. Delta owed a duty to the public at large, including but not limited Plaintiffs, to exercise reasonable care in the selection, hiring and retention of all of its employees, and in particular, those employees with the job responsibility of dealing with the public at large.

77. Delta failed to use reasonable care when it hired flight attendant Stephanie "Doe."

78. Delta failed to make reasonable inquiries into the background of Flight Attendant "Doe," and in particular, into her fitness as a ticket agent dealing directly with the public.

79. Had Delta used reasonable care in inquiring into the background Flight Attendant "Doe," it would have learned that she was patently unqualified for this position, as she was highly irascible by nature and had very poor communication skills, and it would not have hired her.

80. As a result of the foregoing, Delta breached its duty to use reasonable care in the selection and hiring of all of its employees.

81. As a result of Delta's negligence in hiring Flight Attendant "Doe," Plaintiffs were subjected to a false and utterly baseless complaint by Stephanie, resulting in their being wrongfully removed from the plane and causing them to suffer great shame, embarrassment and distress.

82. Upon information and belief, this was not the first time that flight attendant Stephanie had made a false allegation against a passenger on a Delta flight and/or had become involved in a verbal altercation with a passenger on a Delta flight.

83. Upon information and belief, there were several prior instances in which Flight Attendant Stephanie had made similar false allegations against Delta's passengers and/or had become involved in a verbal altercation with passengers on a Delta flight.

84. Delta knew, or in the exercise of reasonable care, should have known, that Flight Attendant "Doe" had a propensity for getting into altercations with passengers without any just cause or provocation.

85. Delta knew, or in the exercise of reasonable care, should have known, that Flight Attendant "Doe" had a propensity for engaging in grossly improper, inappropriate and offensive conduct towards passengers, and then concealing such misconduct by making false accusations against such passengers.

86. Notwithstanding Delta's knowledge of the propensities of Flight Attendant "Doe," Delta retained her as an employee, and allowed her to continue to deal directly with the members of the public, including but not limited to, the Plaintiffs.

87. In choosing to hire, and then retain, Flight Attendant "Doe,'" Delta breached its duty to the public at large, and to the Plaintiffs in particular, to use reasonable care in the selection of its employees.

88. As a result of Delta's negligent hiring and retention of Flight Attendant "Doe," Plaintiffs were subjected to a false, misleading and utterly baseless complaint, were unlawfully seized and detained, were publicly embarrassed and humiliated, were caused to suffer severe emotional distress.

## SIXTH CLAIM FOR RELIEF
(*Negligent Training and Supervision*)

89. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

90. Delta owed a duty to the public at large, including but not limited to, the Plaintiffs, to exercise reasonable care in the training and supervision of all of its employees, and in particular, those employees with the job responsibility of dealing with the public at large.

91. Delta failed to properly and adequately train its employees, including but not limited to, Flight Attendant "Doe," on the subject of how to properly interact with Delta passengers.

92. Delta failed to properly and adequately train its employees, including but not limited to, Flight Attendant "Doe" as to their duties and responsibilities when speaking with Delta passengers.

93. Apart from the aforesaid deficiencies in training, Delta also failed to properly supervise and discipline its employees.

94. Upon information and belief, Delta had learned of previous instances in which Flight Attendant "Doe" had made false allegations against passengers who had filed complaints against her, but failed to take any meaningful corrective action.

95. As a result of Delta's negligent training and supervision of Flight Attendant "Doe," Plaintiffs were subjected to a false, misleading and utterly baseless complaint, were unlawfully seized and detained, were publicly embarrassed and humiliated, were caused to suffer severe emotional distress.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor and against Defendant as follows:

A. Award compensatory damages in an amount to be determined at trial;

B. Award punitive damages in an amount to be determined at trial;

C. Award damages for emotional distress;

D. Grant appropriate injunctive relief requiring Delta to implement anti-discrimination training for its flight attendants and staff;

E. Award Plaintiffs reasonable attorneys' fees and costs; and

F.   Grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
March 28, 2025

**JOSEPH & NORINSBERG, LLC**

_____
Jon L. Norinsberg, Esq.
Bennitta L. Joseph, Esq.
*Attorneys for Plaintiffs*
110 E. 59th Street, Ste. 2300
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889
jon@employeejustice.com
bennitta@employeejustice.com

14